## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into by James McKinney ("McKinney") and The Cheesecake Factory Restaurants, Inc. ("Cheesecake Factory"), and its Effective Date shall be the date the Court enters an Order approving the settlement of McKinney's claims under the Fair Labor Standards Act ("FLSA");

WHEREAS, McKinney filed a lawsuit against Cheesecake Factory in the United States District Court for the Northern District of Georgia, Civil Action Number 1:17-CV-03116-CAP (the "Lawsuit"), alleging that Cheesecake Factory had unlawfully failed to pay him overtime as required under the FLSA;

WHEREAS, McKinney and Cheesecake Factory jointly dismissed the Lawsuit without prejudice for the purpose of complying with a binding arbitration agreement;

WHEREAS, McKinney and Cheesecake Factory submitted this dispute to the American Arbitration Association and have now agreed to a reasonable and fair settlement of McKinney's claim(s);

WHEREAS, Cheesecake Factory has denied and continues to deny any and all unlawful actions and/or liability whatsoever and further disclaims any wrongful acts against McKinney on the part of itself or any past or present officer, manager, agent, employee or representative of Cheesecake Factory; and

WHEREAS, McKinney and Cheesecake Factory ("the Parties") now wish to amicably resolve this dispute;

WHEREAS, McKinney and Cheesecake Factory have moved the Court to re-open the matter for the purpose of reviewing and approving their negotiated settlement agreement;

NOW, THEREFORE in consideration of the covenants and promises set forth below, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.   (a) Within twenty (20) calendar days of the Effective Date, Cheesecake Factory shall pay McKinney the total settlement sum of Thirty-Four Thousand Dollars and No Cents ($34,000.00) (the "Settlement Sum") by delivering to McKinney's counsel via non-USPS carrier with a tracking number the following three (3) settlement checks: (i) a payroll check made payable to McKinney in the gross amount of $7,500.00, less all appropriate payroll tax withholdings based on the federal and state withholding forms that McKinney last submitted to Cheesecake Factory, and will be reported to the IRS on Form W-2; (ii) a non-payroll, non-wage check made payable to McKinney in the amount of $7,500.00 for liquated damages; and (iii) a non-payroll, non-wage check in the amount of $19,000.00 for attorneys' fees and expenses, made payable to JTB Law Group, LLC. The payments described in (i)-(iii) above will be reported to the IRS via an appropriate Form or Forms 1099 to McKinney and JTB Law Group, LLC, respectively. On or before McKinney's signing this Agreement, McKinney's counsel shall

Doc ID: ec2d954d42d41221872a72f8c231e1af7a7826b4

provide Cheesecake Factory's counsel with executed Forms W-9 for his/her firm and for McKinney. McKinney acknowledges that he has no right or entitlement to receive the Settlement Sum other than through the execution of this Agreement and compliance with all of its terms.

(b) McKinney acknowledges and agrees that: (i) the payments described in Paragraph 1(a) may result in taxable income to him under applicable federal, state and local tax laws; (ii) Cheesecake Factory and its attorneys are not providing any tax, accounting, or legal advice to McKinney and do not make any representations regarding any tax obligations or tax consequences relating to or arising from this Agreement; and (iii) McKinney will assume all federal, state and local tax obligations and any other liens, obligations, claims or consequences for taxes owed by him.

(c) The payments and other consideration set forth in this Agreement shall constitute the entire, maximum, and only obligations of Cheesecake Factory to McKinney. McKinney is not entitled to any other benefit, payment, or compensation (e.g., back wages, unpaid overtime, liquidated damages, or attorneys' fees) in any form from Cheesecake Factory or the Released Parties (defined below), other than any pension, retirement, medical insurance, and other benefits to which he is already entitled.

2. Upon the execution on this Agreement, McKinney agrees to consent to a dismissal with prejudice of his lawsuit. Cheesecake Factory will not file said dismissal until after payment of the settlement amounts described above has been received by McKinney's counsel and the court's approval of the settlement has been attained.

3. As additional consideration for the payments described in Paragraph 1 above and so as to avoid any type of future claims between the Parties, McKinney agrees not to apply in the future for employment with Cheesecake Factory or any of its parents, subsidiaries, or affiliates and that his failure to comply with this provision of this Agreement may be grounds for withdrawal of any offer of employment or immediate termination of employment without further explanation. The Parties further agree and acknowledge that McKinney is not waiving claims or rights that he may have after the execution of this Agreement but that he has contractually agreed not to apply for employment with Cheesecake Factory and its related companies, and this Agreement shall constitute a complete bar to any claim that he may have, should he apply for employment with any such company in the future and not be hired, or be hired and subsequently discharged.

4. (a) Up to the date of execution of this Agreement, McKinney, for himself, his heirs, executors, beneficiaries, successors, assignees, immediate family members, and any other person or entity who could now or hereafter assert a claim in his name or on his behalf, hereby releases and forever discharges Cheesecake Factory and its parents, subsidiaries, partners, affiliates, successors, divisions, or assignees, and all past and present officers, directors, employees, attorneys, insurers, and agents of any such company (collectively referred to throughout this Agreement as "the Released Parties" or "Released Party"), from any and all past, present, or future claims, lawsuits, demands, actions, or causes of actions, which McKinney now has, owns, or holds, or claims, or could have claimed, to have, own, or hold, or which McKinney

at any time heretofore had owned or held, or claimed, or could have claimed, to have had, owned, or held, including, but not limited to, claims, actions, causes of action or liabilities arising under the ADA; ADEA; FMLA; Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); the Older Workers Benefit Protection Act ("OWBPA"); the Employee Retirement Income Security Act ("ERISA"); the Equal Pay Act ("EPA"); the Occupational Safety and Health Act ("OSHA"); and/or any other federal, state, municipal, or local employment statutes or ordinances; and/or claims, actions, causes of action or liabilities arising under any other federal, state, municipal, or local statute, law, ordinance or regulation; and/or any other claim whatsoever including, but not limited to, claims for severance pay, breach of contract, wrongful termination, defamation, intentional infliction of emotional distress, tort, personal injury, invasion of privacy, violation of public policy, negligence and/or any other common law, statutory, contract, tort, or other claim; and/or any claims for attorneys' fees. McKinney also agrees and acknowledges that Cheesecake Factory has paid to him all wages and compensation to which he is entitled, except for any pension, retirement, medical insurance, and other benefits to which he is already entitled.

Likewise, Cheesecake Factory also releases and forever discharges McKinney from any and all past, present, or future claims, lawsuits, demands, actions, or causes of actions, which Cheesecake Factory now has, owns, or holds, or claims, or could have claimed, to have, own, or hold, or which Cheesecake Factory at any time heretofore had owned or held, or claimed, or could have claimed, to have had, owned, or held, except for claims that arise from the misappropriation of any of Cheesecake Factory's confidential or proprietary information, such as its recipes, cooking instructions, customer lists, and menus.

      (b)  <u>Acknowledgements.</u>  McKinney acknowledges that he has read and understands this Agreement, and he specifically acknowledges the following:

    (i) that he has had the opportunity to consult with counsel of his own choosing concerning this Agreement, and that he has, in fact, consulted with his own counsel;

    (ii) that he has been given twenty-one (21) days to decide whether to sign this Agreement;

    (iii) that he is waiving, among other claims, FLSA and age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*, and all amendments thereto;

    (iv) that if he signs this Agreement, he has seven (7) days in which to revoke his signature, and that the Agreement cannot become effective or enforceable until after the revocation period has expired (in other words, the revocation period must have expired, <u>and</u> McKinney must not have exercised his right to revoke). To revoke this Agreement, McKinney must send a written notice to counsel for Cheesecake Factory no later than the eighth (8th) day after McKinney's signing of the Agreement; and

    (v) that by signing this Agreement, he is not waiving or releasing any

Doc ID: ec2d954d42d41221872a72f8c231e1af7a7826b4

claims based on actions or omissions that occur after the date of his signing of this Agreement.

(c) McKinney agrees that if any allegation of the foregoing released claims is prosecuted in his name before any court or administrative agency (including, but not limited to, in or by the United States Equal Employment Opportunity Commission or the Department of Labor), he waives and agrees not to take any award of money or other damages (including reinstatement) from such suit.

5. McKinney agrees to not publicly disparage Cheesecake Factory to its customers, in the press or other public media. Cheesecake Factory agrees to instruct Jodi Canzoneri and Michael Kelly not to publicly disparage McKinney to potential employers, in the press or other public media. Nothing in this Agreement, however, shall prevent McKinney or Cheesecake Factory from responding accurately to any question, inquiry, or request for information when required by legal process.

6. The Parties agree that all inquiries regarding McKinney's employment with Cheesecake Factory should be directed to Cheesecake Factory's work number line, 1-800-367-5690. The work number line will provide the same neutral work employment history information for Cheesecake Factory that it provides for any other former employee of Cheesecake Factory.

7. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the Parties and their heirs, beneficiaries, administrators, representatives, executors, successors and assignees.

8. The Parties acknowledge that this Agreement is a compromise of all disputed claims and that nothing in this Agreement constitutes or will be treated by any party as an admission of liability or wrongdoing.

9. The Parties acknowledge that this Agreement is contingent upon obtaining review and approval of the Agreement by the Court, and McKinney agrees to cooperate fully in the preparation and presentation of a joint motion to obtain such approval.

10. The Parties recognize, acknowledge, and agree that this Settlement is being made purely on a compromise basis and that no Party admits liability to the other or to any other person whatsoever. It is further acknowledged and agreed that neither Party is considered a prevailing party for the purposes of this Agreement.

11. Should any of the provisions of this Agreement be declared or be determined to be illegal, void, invalid, or unenforceable by a court of competent jurisdiction, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement. It is the intention of the Parties that if any term or provision of this Agreement is capable of two constructions, one of which would render the term or provision void and the other of which would render the term or provision valid, then the term or provision shall have the meaning that renders it valid.

Doc ID: ec2d954d42d41221872a72f8c231e1af7a7826b4

12.     This Agreement sets forth the entire agreement and understanding between the Parties on the subject matter of this Agreement, and supersedes all prior and contemporaneous discussions and negotiations between them.

13.     This Agreement shall be governed and will be construed in accordance with the laws of the State of Georgia.

14.     This Agreement may be executed in identical counterpart copies, each of which shall be an original, but all of which taken together shall constitute one and the same instrument. A facsimile or electronic copy of either Party's signature will be deemed as legally binding as the original signatures. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party against whom enforcement is sought.

[SIGNATURE PAGE FOLLOWS]

Doc ID: ec2d954d42d41221872a72f8c231e1af7a7826b4

IN WITNESS THEREOF, the Parties have executed this Agreement by their signatures below.

**JAMES MCKINNEY**

_____
Signature

Dated: 10/16/2018

**THE CHEESECAKE FACTORY RESTAURANTS, INC.**

By: _____
Signature

Name: Sidney Greathouse

Title: VP, Legal Services

Dated: 10/24/18